# 23-13940-CC

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

TOMARIO RICARDO HICKS,
Defendant-Appellant.

On Appeal from the United States District Court
For the Middle District of Georgia, Albany Division
Docket No. 1:22-CR-00028-LAG-TQL-1

**BRIEF OF APPELLEE**


**Peter D. Leary**
United States Attorney
**Stuart E. Walker**
Assistant United States Attorney

300 Mulberry Street, Suite 400
P.O. Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

## AMENDED CERTIFICATE OF INTERESTED PERSONS

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-5, undersigned counsel certifies that the following persons have, or may have had, an interest in the outcome of this case (the persons identified in bold below have been added to this amended certificate):

- ***Conroy, Byron L., Jr. – Executive Director, Federal Defenders of the Middle District of Georgia, Inc.***;
- Dodson, Jonathan R. – Attorney for Defendant-Appellant;
- Gabriel, Russell C. – former Interim Executive Director, Federal Defenders of the Middle District of Georgia, Inc.;
- Gardner, Leslie Abrams – Judge, United States District Court, Middle District of Georgia;
- Granims, Michael – Attorney for Defendant-Appellant;
- Hicks, Tomario Ricardo – Defendant-Appellant;
- Langstaff, Thomas Q. – United States Magistrate Judge, Middle District of Georgia;
- Leary, Peter D. – United States Attorney, Middle District of Georgia;

- Redavid, Matthew Jr. – Assistant United States Attorney, Middle District of Georgia;
- Schieber, Michelle L. – Assistant United States Attorney, Middle District of Georgia;
- Simpkins, Michael N. – Attorney for Defendant-Appellant;
- ***Walker, Stuart E. – Assistant United States Attorney, Middle District of Georgia***;
- Victims: No victims have been identified.

No publicly traded company or corporation has an interest in the outcome of this appeal.

May 17, 2024

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

Post Office Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

## STATEMENT REGARDING ORAL ARGUMENT

The government does not request oral argument because the facts and arguments are adequately presented in the briefs and the record. Oral argument is unlikely to significantly aid the Court's decisional process.

## TABLE OF CONTENTS


AMENDED CERTIFICATE OF INTERESTED PERSONS .......... C-1

STATEMENT REGARDING ORAL ARGUMENT .............................i

TABLE OF CONTENTS .................................................................ii

TABLE OF AUTHORITIES .............................................................iv

STATEMENT OF JURISDICTION ................................................viii

STATEMENT OF THE ISSUES ........................................................1

STATEMENT OF THE CASE ............................................................2

A. Course of Proceedings and Disposition in the Court Below .........2

B. Statement of Facts .........................................................................3

1. The offense conduct. ...............................................................3

2. Hicks is charged with possessing a gun while a felon and pleads guilty, and the Probation Office prepares a presentence investigation report. ..........................................4

3. Hicks objects to his status as an ACCA offender, and the district court overrules his objection, varies downward, and imposes a 180-month sentence. ............................................6

C. Statement of the Standard or Scope of Review .............................9

SUMMARY OF THE ARGUMENT ...................................................11

ARGUMENT AND CITATION OF AUTHORITY ............................14

I. Hicks's four Georgia marijuana convictions were "serious drug offenses" under ACCA when he violated 18 U.S.C. § 922(g)(1). . 14

A. Binding circuit precedent forecloses Hicks's argument that the federal marijuana definition encompasses only one species of cannabis. .............................................................17

B. Georgia's marijuana definition does not criminalize more conduct than the federal definition, despite containing a minor descriptive difference about which "mature stalks" of the cannabis plant are excluded from the definition of marijuana. ......................................................................20

C. Both Georgia law and federal law defined marijuana to include "hemp" at the relevant times—when Hicks possessed with intent to distribute marijuana in 2000, 2007, 2009, and 2012—thereby creating no categorical overbreadth. ........... 28

II. When he violated § 922(g)(1), Hicks's four marijuana convictions were "controlled substance offenses," as defined by U.S.S.G. § 4B1.2(b). ........................................................................ 29

III. Hicks's Second Amendment challenges to § 922(g)(1) are foreclosed by binding precedent................................................. 32

IV. Even if *Rozier* and *Dubois* do not bar Hicks's as-applied Second Amendment challenge to § 922(g)(1), it is meritless in any event because one may not obtain an exemption from § 922(g)(1) based on the nature of his crime or his individual circumstances........ 33

CONCLUSION........................................................................... 39

CERTIFICATE OF COMPLIANCE ................................................ 40

CERTIFICATE OF SERVICE ........................................................ 41

## TABLE OF AUTHORITIES

<u>**Cases**</u> <u>**Page**</u>

*Blanton v. City of North Las Vegas*,
489 U.S. 538 (1989) ........................................................................ 34

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ........................................................................ 34

*C.W. v. Dep't of Human Servs.*,
353 Ga. App. 360 (2019) ............................................................ 31, 32

*Chamu v. U.S. Att'y Gen.*,
23 F.4th 1325 (11th Cir. 2022) .................................................. 21, 22

*Copeland v. Ga. Dep't of Corr.*,
97 F.4th 766 (11th Cir. 2024) .............................................................. 8

*Dunn v. State*,
178 Ga. App. 6 (1986) ...................................................................... 24

*Lewis v. United States*,
518 U.S. 322 (1996) ........................................................................ 34

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ................................................................ 13, 33, 35

*Pontarelli v. United States Dep't of the Treasury*,
285 F.3d 216 (3d Cir. 2002) (en banc) ....................................... 37, 38

*Said v. U.S. Att'y Gen.*,
28 F.4th 1328 (11th Cir. 2022) .......................................................... 27

*United States v. Acosta*,
963 F.2d 551 (2d Cir. 1992) .............................................................. 26

*United States v. Coats*,
8 F.4th 1228 (11th Cir. 2021) ..................................................... 16, 21

*United States v. Berry*,
876 F.2d 55 (8th Cir. 1989) .............................................................. 26

*United States v. Bishop*,
940 F.3d 1242 (11th Cir. 2019) ........................................................ 9

*United States v. Bennett*,
472 F.3d 825 (11th Cir. 2006) .......................................................... 9

*United States v. Dixon*,
874 F.3d 678 (11th Cir. 2017) ............................................. 15, 16, 21

*United States v. Dubois*,
94 F.4th 1284 (11th Cir. 2024) ....................... 10, 13, 29, 30, 31, 32, 33

*United States v. Gaines*,
489 F.2d 690 (5th Cir. 1974) ............................................... 11, 18, 19

*United States v. Garcia*,
925 F.2d 170 (7th Cir. 1991) ........................................................... 26

*United States v. Jackson*,
55 F.4th 846 (11th Cir. 2022) ................................................. 7, 12, 28

*United States v. Jordan*,
635 F.3d 1181 (11th Cir. 2011) ........................................................ 10

*United States v. Laines*,
69 F.4th 1221 (11th Cir. 2023) ................................................... 14, 15

*United States v. Marcus*,
560 U.S. 258 (2010) ...................................................................... 9, 10

*United States v. Maskeny*,
609 F.2d 183 (5th Cir. 1980) ............................................... 11, 18, 19

*United States v. Miles*,
75 F.4th 1213 (11th Cir. 2023) .......................................................... 9

*United States v. Moore*,
22 F.4th 1258 (11th Cir. 2022) ........................................................ 38

*United States v. Poole*,
878 F.2d 1389 (11th Cir. 1989) ........................................................ 25

*United States v. Rozier*,
598 F.3d 768 (11th Cir. 2010) ..................................................... 13, 33

*United States v. Sanapaw*,
366 F.3d 492 (7th Cir. 2004) .......... 19

*United States v. Vail-Bailon*,
868 F.3d 1293 (11th Cir. 2017) (en banc) .......... 15, 16, 21

*United States v. Valois*,
915 F.3d 717 (11th Cir. 2019) .......... 10

*Westberry v. State*,
178 Ga. App. 243 (1986) .......... 24

*Young v. United States*,
936 F.2d 533 (11th Cir. 1991) .......... 16

**Constitution and Statutes**

U.S. Const. amend. V .......... 34

18 U.S.C. § 922(g)(1) .......... 2, 5, 6, 10, 13, 14, 27, 28, 32, 33, 35
36, 37, 38

18 U.S.C. § 924(c)(1)(A) .......... 2

18 U.S.C. § 924(e) .......... 1, 11, 14, 15

18 U.S.C. § 925(c) .......... 37

18 U.S.C. § 3231 .......... viii

18 U.S.C. § 3742 .......... viii

21 U.S.C. § 802(16) .......... 17, 20, 26

21 U.S.C. § 841(a)(1) .......... 2, 27

21 U.S.C. § 841(b)(1)(A)(vii) .......... 25

21 U.S.C. § 841(b)(1)(B)(vii) .......... 25

21 U.S.C. § 841(b)(1)(C) .......... 2, 25

28 U.S.C. § 1291 .......... viii

O.C.G.A. § 16-13-21(16) .......... 17, 20

O.C.G.A. § 16-13-30(a) .......... 31

O.C.G.A. § 16-13-30(b) .......... 31

O.C.G.A. § 16-13-30(j)(1) .......... 26, 30, 31

**Rules**

Eleventh Circuit Rules 26.1-1 to 26.1-5 .............................................. C-1
Federal Rule of Appellate Procedure 4 ............................................... viii
Federal Rule of Appellate Procedure 26.1 ......................................... C-1
Federal Rule of Appellate Procedure 32 ............................................... 40
Federal Rule of Criminal Procedure 52(b) ........................................ 9, 38

**United States Sentencing Guidelines**

U.S.S.G. § 2K2.1(a)(2) .................................................... 4, 10, 12, 28, 32
U.S.S.G. § 2K2.1(b)(6)(B) ....................................................................... 5
U.S.S.G. § 3E1.1 ..................................................................................... 5
U.S.S.G. § 4B1.2(b) ................................................... 1, 12, 28, 29, 30, 32
U.S.S.G. § 4B1.4 ..................................................................................... 6
U.S.S.G. § 4B1.4(b) ................................................................................. 5
U.S.S.G. § 4B1.4(b)(3)(A) ......................................................... 5, 6, 14, 29

**Miscellaneous**

*The Federalist* No. 74 (Alexander Hamilton)
(Jacob E. Cooke ed. 1961) ................................................................ 35
H.R. Rep. No. 183,104th Cong., 1st Sess. 15 (1996) ............................ 37
S. Rep. No. 353, 102d Cong., 2d Sess. 19, 20 (1992) ............................ 37

## STATEMENT OF JURISDICTION

Appellant Tomario Ricardo Hicks appeals his conviction and ACCA-minimum sentence of 180 months, which he received after pleading guilty to possessing a gun while a felon. The district court sentenced him on November 9, 2023 (ECF No. 66 at 13),[1] and entered judgment on November 16, 2023. (ECF No. 56.) Hicks appealed on November 29, 2023. (ECF No. 58.) *See* Fed. R. App. P. 4(b)(1)(a)(i). The district court had subject matter jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

1 References to district court documents (including transcripts) are indicated by "ECF No. ___ at ___," identifying the relevant district court docket entry and the ECF-generated page number in each document's header. References to Hicks's brief are to the software-generated page numbers in the footer rather than the ECF-generated page numbers in the header.

## STATEMENT OF THE ISSUES

After pleading guilty to possessing a gun while a felon, Hicks was sentenced to 180 months in prison, a sentence below his advisory guidelines sentencing range of 188 to 235 months and based on the district court's finding that Hicks was an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because he had four Georgia marijuana convictions that were "serious drug offenses" committed on occasions different from one another. Hicks presents three questions for review. The first is preserved; the second and third are not:

1. Were Hicks's four Georgia marijuana convictions "serious drug offenses," subjecting him to an ACCA offense level of 34 under the sentencing guidelines?

2. If Hicks was not subject to ACCA, did the district court plainly err in finding that his Georgia marijuana convictions were "controlled substance offenses," as defined by U.S.S.G. § 4B1.2(b), subjecting him to a base offense level of 24 under the guidelines?

3. Did the district court plainly err by accepting Hick's plea of guilty to violating 18 U.S.C. § 922(g)(1), on the ground that § 922(g)(1) violates the Second Amendment, either facially or as applied to him?

## STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition in the Court Below

A grand jury indicted Hicks for (1) possessing a gun while a felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); (2) possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count 2); and (3) possessing a gun in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). (ECF No. 1 at 1-3.)

In accordance with a written plea agreement, Hicks pleaded guilty to Count 1, in exchange for the government's dismissal Counts 2 and 3. (ECF No. 36 at 2, 6; ECF No. 56 at 1.) Finding that Hicks was an armed career criminal under ACCA, the district court calculated his advisory guidelines sentencing range to be 188 to 235 months, based on a total offense level of 31 and a criminal-history category of VI. (ECF No. 66 at 8.) The district court varied downward to the minimum penalty required by ACCA, sentencing Hicks to 180 months in prison, to be

followed by 5 years of supervised release. (ECF No. 66 at 13; ECF No. 56 at 2, 3.) Hicks timely appealed. (ECF No. 58.)

## B. Statement of Facts

### 1. The offense conduct.[2]

Hicks, while driving, broke a traffic law and was stopped by law enforcement. He was the car's sole occupant. While stopping Hicks, the patrol officer saw him throw items out of the car's front passenger window. Hicks admitted that he had thrown ecstasy pills out of the car and that he had a gun in the car.

Eight small bags were found on the side of the road beside Hicks's car. Each contained 10 colored pills, which testing later confirmed to consist of more than 32 grams of methamphetamine. A handgun was found on the driver's side floorboard, along with a digital scale in the center console and a box of plastic baggies in the backseat. Hicks knew he was a felon on the day of the traffic stop. (ECF No. 36 at 9-10.)

---

[2] This account is drawn from the facts admitted by Hicks in his written plea agreement. (ECF No. 36 at 9-10.)

### 2. Hicks is charged with possessing a gun while a felon and pleads guilty, and the Probation Office prepares a presentence investigation report.

A grand jury indicted Hicks for, among other crimes, possessing a gun while a felon. (ECF No. 1 at 1.) He pleaded guilty to that charge in accordance with a written plea agreement, and the government dismissed the remaining charges. (ECF No. 36 at 2; ECF No. 56 at 1.) In his plea agreement, and again at his plea colloquy, Hicks admitted that he (1) possessed with intent to distribute marijuana in December 2000 and was convicted of doing so under Georgia law; (2) possessed with intent to distribute marijuana in 2007 and was convicted of doing so under Georgia law; (3) possessed with intent to distribute marijuana in 2009 and was convicted of doing so under Georgia law; and (4) possessed with intent to distribute marijuana in 2012 and was convicted of doing so under Georgia law. (ECF No. 36 at 10; ECF No. 67 at 9-10.)

In anticipation of Hicks's sentencing, the Probation Office prepared a presentence investigation report ("PSR") for the benefit of the district court. (ECF No. 47.) The Probation Office first assigned Hicks a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) because he

had at least two previous convictions for "controlled substance offenses" when he violated § 922(g)(1). (ECF No. 47 ¶ 20.) The Probation Office then added 4 levels under U.S.S.G. § 2K2.1(b)(6)(B) because Hicks possessed the gun in connection with a "controlled substance offense" (possessing with intent to distribute methamphetamine on the day of the traffic stop). (ECF No. 47 ¶ 21.) Hicks's adjusted offense level became 28. (ECF No. 47 ¶ 25.)

The Probation Office further concluded, however, that Hicks was an armed career criminal under ACCA, having had at least three previous convictions for "serious drug offenses," and because he possessed the gun in connection with a "controlled substance offense" (possessing with intent to distribute methamphetamine on the day of the traffic stop) his offense level was increased to 34 under U.S.S.G. § 4B1.4(b)(3)(A).[3] (ECF No. 47 ¶ 26.)

The Probation Office next subtracted 2 levels under U.S.S.G. § 3E1.1(a) because Hicks accepted responsibility for his conduct (ECF No. 47 ¶ 27) and subtracted 1 level under U.S.S.G. § 3E1.1(b) because

---

[3] The Probation Office was required by the sentencing guidelines to apply the "greatest of" the applicable offense levels, so it applied 34 instead of 28. *See* U.S.S.G. § 4B1.4(b).

he timely pleaded guilty. (ECF No. 47 ¶ 28.) As adjusted, Hicks's total offense level was 31. (ECF No. 47 ¶ 29.)

The Probation Office assigned Hicks a criminal-history category of VI because he violated § 922(g)(1) while committing a "controlled substance offense." (ECF No. 47 ¶ 41.) Based on a total offense level of 31 and a criminal-history category of VI, Hicks's advisory guidelines sentencing range was 188 to 235 months. (ECF No. 47 ¶ 58.)

### 3. Hicks objects to his status as an ACCA offender, and the district court overrules his objection, varies downward, and imposes a 180-month sentence.

Hicks objected in writing to the Probation Office's calculation of an ACCA offense level of 34 under U.S.S.G. § 4B1.4(b)(3)(A). (ECF No. 40.) Asserting that he was not subject to ACCA, Hicks initially argued that Georgia's marijuana definition included hemp in 2000, 2007, 2009, and 2012 (the dates of his Georgia marijuana convictions) while the federal marijuana definition excluded hemp in 2023 (when he was sentenced for the § 922(g)(1) offense)—making Georgia's marijuana definition categorically broader than the 2023 federal definition—with the result that his marijuana convictions were not "serious drug offenses" under ACCA, rendering U.S.S.G. § 4B1.4 inapplicable. (ECF No. 40 at 4-6.)

Later, in supplemental briefing ordered by the district court, Hicks acknowledged that *United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022), which adopted a date-of-previous-conviction rule for comparing the scope of state law to the scope of federal law, defeated his hemp-overbreadth argument because hemp was included in both the Georgia and federal marijuana definitions until 2018, well after his state convictions. Given *Jackson*, Hicks shifted his angle of attack, asserting two new overbreadth arguments: first, that "Georgia excludes only 'defoliated' mature stalks, where the Federal definition excludes all mature stalks" (ECF No. 50 at 5), and, second, that "Georgia [] defines marijuana as any plant in the Cannabis genus, yet federal law limits the definition to a single species within that genus, Cannabis sativa L." (ECF No. 50 at 7.)

In response, the government argued, first, that the textual variance between the description of "mature stalks" in Georgia and federal law did not disqualify Hicks's marijuana convictions as ACCA predicates and, second, that binding circuit precedent foreclosed his argument that the federal marijuana definition encompasses only one species of marijuana. (ECF No. 51 at 3-4.)

At sentencing, the district court overruled Hicks's ACCA objections, finding that he had failed to establish that Georgia's marijuana definition was categorically broader than the federal definition as of the time of his Georgia convictions. (ECF No. 66 at 5-8) (overruling the ACCA objections).[4] Varying downward from the advisory sentencing range, the district court then sentenced Hicks to 180 months in prison (ACCA's minimum penalty), followed by 5 years of supervised release. (ECF No. 66 at 13.)

---

[4] Given its rejection of Hicks's overbreadth challenges to his marijuana convictions, the district court opted not to entertain his isomer- and ioflupane-overbreadth challenges to his one 2007 Georgia conviction for possessing with intent to distribute cocaine. (ECF No. 66 at 6) ("The defendant's four qualifying marijuana convictions are more than the three that are needed to qualify for the ACCA. Therefore, I need not address the cocaine convictions."). On appeal, Hicks renews his cocaine-related arguments (Blue Br. 14-15, 25-33), but this Court should not entertain them because this is "a court of review, not a court of first view." *Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 780-81 (11th Cir. 2024) (declining to address an issue raised on appeal that the district court had acknowledged but deemed unnecessary to address). What's more, a holding by this Court that Hicks's marijuana convictions are ineligible ACCA predicates will render moot any consideration of his cocaine conviction. It is thus unnecessary to consider that conviction at all. Without the marijuana convictions, Hicks does not have three ACCA-qualifying convictions.

### C. Statement of the Standard or Scope of Review

1. This Court reviews de novo "a district court's determination that a state conviction is a 'serious drug offense' under ACCA." *United States v. Miles*, 75 F.4th 1213, 1219 (11th Cir. 2023).

2. This Court usually "review[s] de novo whether a prior conviction qualifies as a 'controlled substance offense' under the Guidelines." *United States v. Bishop*, 940 F.3d 1242, 1253 (11th Cir. 2019). But where, as here, a challenge to the calculation of the advisory sentencing range is forfeited in the district court and raised for the first time on appeal, this Court reviews it only for plain error. *See United States v. Bennett*, 472 F.3d 825, 831 (11th Cir. 2006); Fed. R. Crim P. 52(b).

To obtain Rule 52(b) relief, Hicks must show "that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected [his] substantial rights . . . ' ; and (4) 'the error seriously affects the fairness, integrity or public

reputation of judicial proceedings.'" *United States v. Marcus*, 560 U.S. 258, 262 (2010) (brackets omitted).[5]

3. This Court usually reviews de novo a constitutional challenge to a federal statute. *See United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). But where, as here, the challenge was forfeited in the district court and raised for the first time on appeal, this Court reviews it only for plain error. *See United States v. Valois*, 915 F.3d 717, 729 n.7 (11th Cir. 2019).[6]

---

[5] Hicks says that the challenges he presents on appeal to his marijuana convictions as "controlled substances offenses" under the guidelines (as distinct from his challenges to those convictions as "serious drug offenses" under ACCA) should be reviewed de novo. (Blue Br. 12.) That is wrong. Hicks did not object in the district court to the calculation of his base offense level of 24 under U.S.S.G. § 2K2.1(a)(2). In fact, he expressly accepted that initial base offense level, arguing that his *total* offense level should be 25—starting with the base offense level of 24, then increasing it by 4 for having used the gun in connection with the drug offense, and then decreasing it by 3 for acceptance of responsibility. (ECF No. 40 at 2, 9.) As a result, this issue, if not waived altogether, is subject only to plain-error review. The proper standard of review does not ultimately matter, however, because Hicks's challenges fail under either one.

[6] Hicks disagrees that plain-error review applies to his Second Amendment challenges to § 922(g)(1) (Blue Br. 12-13), but he agrees that both his facial and his as-applied challenges are foreclosed by *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024). (Blue Br. 13, 17, 18.)

## SUMMARY OF THE ARGUMENT

1. The district court properly applied an ACCA offense level of 34 under the sentencing guidelines because Hicks's four Georgia marijuana convictions were "serious drug offenses" under 18 U.S.C. § 924(e)(2)(A)(ii). All his overbreadth arguments fail.

*The genus-overbreadth argument.* When Hicks possessed with intent to distribute marijuana in 2000, 2007, 2009, and 2012—and now—Georgia defined marijuana to include "all parts of the plant of the genus Cannabis," while federal law defined marijuana to include "all parts of the plant Cannabis sativa L." Hicks argues that the federal definition is narrower than Georgia's because federal law reaches only one species of cannabis. That construction of the statute, however, is foreclosed by binding precedent, which holds that the federal definition reaches all species of cannabis. *See United States v. Gaines*, 489 F.2d 690 (5th Cir. 1974); *United States v. Maskeny*, 609 F.2d 183 (5th Cir. 1980). As a result, Georgia law and federal law encompassed the same cannabis species on the relevant dates.

*The stalks-overbreadth argument.* When Hicks possessed with intent to distribute marijuana in 2000, 2007, 2009, and 2012—

and now—Georgia excluded from its marijuana definition the cannabis plant's "completely defoliated mature stalks," while federal law excluded from its marijuana definition the cannabis plant's "mature stalks." That difference in verbal formulation, however, does not establish that Georgia law criminalizes more conduct than federal law. As a result, the statutory text that Hicks has seized upon does not establish categorical overbreadth.

*The hemp-overbreadth argument*. When Hicks possessed with intent to distribute marijuana in 2000, 2007, 2009, and 2012, both Georgia law and federal law defined marijuana to include "hemp." Hemp was not excluded from the federal definition until 2018. Hicks thus acknowledges that his hemp-overbreadth argument fails under the date-of-previous-conviction rule adopted by this Court in *Jackson*. (Blue Br. 15, 22.)

2. The district court did not plainly err in calculating Hicks's initial base offense level to be 24 under U.S.S.G. § 2K2.1(a)(2) because his four Georgia marijuana convictions were "controlled substance offenses," as defined by U.S.S.G. § 4B1.2(b). Possessing with intent to distribute marijuana in violation of Georgia law is a controlled

substance offense, where, as here, Georgia criminalized the distribution of marijuana on the date of the previous state offenses. *See United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024). *Dubois* controls this issue adversely to Hicks. (The Court need not reach this issue if it concludes that Hicks was subject to ACCA.)

3. The district court did not plainly err in accepting Hicks's guilty plea. Hicks's argument that § 922(g)(1) violates the Second Amendment—either facially or as applied—is foreclosed by *United States v. Rozier*, 598 F.3d 768, 770-71 (11th Cir. 2010), which was not abrogated by *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). *See Dubois*, 94 F.4th at 1293. Hicks concedes that *Rozier* and *Dubois* defeat both of his Second Amendment challenges. (Blue Br. 13, 17, 18.) In addition, his as-applied challenge fails on the merits because one may not obtain an exemption from § 922(g)(1) based on the nature of his crime or his individual circumstances.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Hicks's four Georgia marijuana convictions were "serious drug offenses" under ACCA when he violated 18 U.S.C. § 922(g)(1).

The district court concluded that Hicks was an armed career criminal under ACCA, warranting an increased offense level of 34 under U.S.S.G. § 4B1.4(b)(3)(A), because his four Georgia marijuana convictions were "serious drug offenses" committed on occasions different from one another when he violated § 922(g)(1). That conclusion was correct and should be affirmed.

This Court's decision in *United States v. Laines*, 69 F.4th 1221 (11th Cir. 2023), summarizes the governing analytical framework. "Under [ACCA], if a defendant convicted of being a felon in possession of a firearm under section 922(g) 'has three previous convictions . . . for a violent felony or a serious drug offense,' a mandatory minimum sentence of 15 years applies." *Id.* at 1332-33 (quoting 18 U.S.C. § 924(e)(1)). "A 'serious drug offense' includes 'an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . [as defined in 21 U.S.C. section 802], for which a maximum term of imprisonment of ten

years or more is prescribed by law.'" *Id.* at 1233 (quoting 18 U.S.C. § 924(e)(2)(A)(ii)).

"To determine whether a defendant's prior conviction qualifies as a predicate offense for a sentencing enhancement, federal courts generally apply the 'categorical approach,' meaning [they] look only to the elements of the statute under which the defendant was convicted and not at the facts underlying the prior conviction." *Id.* (citation omitted). Courts must "presume that the prior conviction rested upon nothing more than the least of the acts criminalized or the least culpable conduct." *Id.* "That is, the least culpable conduct prohibited under the state law must qualify as a predicate offense, and all the controlled substances covered by the state law must also be controlled substances under federal law." *Id.*

Hicks bears the burden of establishing that Georgia's marijuana definition is impermissibly overbroad under the categorical approach. *See United States v. Dixon*, 874 F.3d 678, 682 (11th Cir. 2017) ("In short, Dixon has not shown that . . . there is a realistic probability that Florida would apply the statute to this kind of conduct."); *United States v. Vail-Bailon*, 868 F.3d 1293, 1306 (11th Cir. 2017) (en banc)

("Nor has Vail-Bailon shown that prosecution under Florida Statute § 784.041 for the conduct described in the hypotheticals is a realistic probability."); *United States v. Coats*, 8 F.4th 1228, 1247 (11th Cir. 2021) ("Defendant must establish a 'realistic probability that accomplice liability' under Georgia's party-to-a-crime statute 'extends significantly beyond' generic accomplice law in order to prevail on his ACCA argument.").[7]

Advancing three different arguments, Hicks asserts that Georgia's marijuana definition is categorically broader than the federal definition. First, he says that Georgia defines marijuana to include all species of cannabis, while federal law defines it to reach only one cannabis species. (Blue Br. 23-25.) Second, he says that Georgia excludes from its definition the "completely defoliated mature stalks" of the cannabis plant, while federal law excludes from its definition the "mature stalks."

---

[7] *Dixon*, *Vail-Bailon*, and *Coats* make clear that it is Hicks who bears the burden of showing a realistic probability of prosecution to support a categorical-overbreadth challenge, even though, as an initial matter, when it comes to sentencing enhancements, "the Government has the burden at sentencing to prove that [a defendant] has two prior convictions for controlled substance offenses as defined in section 4B1.2(2) in order to classify [him] as a career offender and enhance his sentence under the Guidelines." *Young v. United States*, 936 F.2d 533, 536 (11th Cir. 1991).

(Blue Br. 25.) Third, he says that at the time of his previous convictions Georgia defined marijuana to include hemp, while at the time of his federal sentencing federal law defined marijuana to exclude hemp. (Blue Br. at 34-35.) The government addresses each argument in turn.

### A. Binding circuit precedent forecloses Hicks's argument that the federal marijuana definition encompasses only one species of cannabis.

Hicks notes (Blue Br. 23) that, at the time of his previous marijuana offenses in 2000, 2007, 2009, and 2012, Georgia defined marijuana to include "all parts of the plant of the *genus* Cannabis," O.C.G.A. § 16-13-21(16) (emphasis added), while federal law defined marijuana to include "all parts of the plant Cannabis *sativa L.*" 21 U.S.C. § 802(16)(A) (emphasis added). He asserts that "[t]axonomically, a genus is a broader category than a species" and, relatedley, that "[a] genus can include multiple species." (Blue Br. 23.) From those several propositions, Hicks reasons that the Georgia statute (referring to the "genus") is categorically broader than the federal statute (referring to the "sativa L." species). (Blue Br. 23-25); (Blue Br. 24) ("Georgia defines marijuana taxonomically more broadly than the federal government.").

Over 50 years ago, this Court rejected the argument that the federal marijuana definition encompasses only one species of cannabis. *See United States v. Gaines*, 489 F.2d 690 (5th Cir. 1974). In *Gaines*, a jury convicted the defendant of conspiring to import marijuana. *Id.* at 690. On appeal, he argued that his conviction should be overturned because "Cannabis sativa L. is the only species of marihuana expressly prohibited by statute," yet the government's expert witness at trial "was unable to differentiate between . . . three species of marihuana, i.e., Cannabis *sativa L.*, Cannabis *indica*, and Cannabis *ruderalis*." *Id.* at 691 (emphases added). The defendant argued that, because the witness could not differentiate between those cannabis species, the government had failed to "prove beyond a reasonable doubt that in fact the substance examined was Cannabis sativa L. and not Cannabis indica." *Id.* Relying on the interpretation of the federal marijuana definition adopted by the Second and Third Circuits, this Court rejected the defendant's argument, affirmed his conviction, and concluded that the federal marijuana definition reaches all species of cannabis. *Id.*

That conclusion was reiterated in *United States v. Maskeny*, 609 F.2d 183 (5th Cir. 1980), in which this Court explained that its

all-species construction of the federal marijuana definition was supported by decisions of the First, Second, Third, Eighth, Ninth, Tenth, and District of Columbia Circuits. *Id.* at 188. Applying *Gaines*, the Court in *Maskeny* held that "the District Court should not have entertained, or allowed, the protracted contentions of the defense to the effect that the marijuana taken from the captured plane was of 'a species' different [than] Cannabis sativa L." *Id.* This interpretation of the federal marijuana definition prevails throughout the Nation. *See, e.g.*, *United States v. Sanapaw*, 366 F.3d 492, 495 (7th Cir. 2004) ("This Court, and every other court that has decided this issue, has concluded that it would be manifestly unreasonable to interpret the Act to apply solely to Cannabis sativa L."); *id.* ("It is absurd to believe that Congress intended to ban the euphoric effect of one species of marijuana but not the exact same euphoric effect of other species of marijuana, and we refuse to adopt such an interpretation.").

*Gaines* and *Maskeny*, binding here, hold that the federal marijuana definition encompasses all species of cannabis. Those cases defeat Hicks's argument that Georgia's marijuana definition reaches species of cannabis not encompassed by federal law.

## B. Georgia's marijuana definition does not criminalize more conduct than the federal definition, despite containing a minor descriptive difference about which "mature stalks" of the cannabis plant are excluded from the definition of marijuana.

Under Georgia law, marijuana includes "all parts of the [cannabis] plant" but excludes "the completely defoliated mature stalks of such plant." O.C.G.A. § 16-13-21(16). Similarly, under federal law, marijuana includes "all parts of the [cannabis] plant" but excludes "the mature stalks of such plant." 21 U.S.C. § 802(16)(A), (B)(ii).[8] Even though both Georgia law and federal law exclude the "mature stalks" of the cannabis plant from the definition of marijuana, Hicks fixates on the words "completely defoliated"[9]—absent from the federal exclusion—to argue that Georgia law criminalizes a broader swath of conduct because its mature-stalks exclusion is narrower than the federal mature-stalks exclusion. (Blue Br. 25) ("[B]y providing a narrower exception related to

---

8 Both definitions also contain other exclusions not relevant here.

9 The OED defines "defoliate" to mean "To strip of leaves." *See* https://www.oed.com/dictionary/defoliate_v?tab=meaning_and_use (visited May 17, 2024). Its synonym is "unleaved," which means "Stripped of leaves; defoliated." *See* https://www.oed.com/dictionary/unleaved_adj2?tab=meaning_and_use#16546753 (visited May 17, 2024).

mature stalks of a plant, the Georgia marijuana definition is broader than the federal definition."). Hicks's argument is unsound.

"The Supreme Court has made clear that litigants who contend that state statutes are broader than their federal analogues must come prepared." *Chamu v. U.S. Att'y Gen.*, 23 F. 4th 1325, 1330 (11th Cir. 2022). To prevail on his overbreadth challenge, Hicks bears the burden of establishing that "there is 'a realistic probability, not a theoretical possibility,' that the State would apply its statute to conduct that does not meet the federal standard." *Id.*; *see also Dixon*, 874 F.3d at 682; *Vail-Bailon*, 868 F.3d at 1306; *Coats*, 8 F.4th at 1247. He can do so in one of two ways.

First, he can identify one or more judicial decisions upholding a Georgia marijuana conviction involving a substance whose possession with intent to distribute is lawful under federal law. *See Chamu*, 23 F.4th at 1330 ("The simplest way for an offender to show that realistic probability is to point to a case in which the state statute was used to prosecute such conduct."). Second, he can rely on a textual variance between the relevant Georgia statute and the relevant federal statute, if that variance consists of "facially overbroad statutory text"

that itself creates a reasonable probability that Georgia would apply its statute to a substance whose possession with intent to distribute is lawful under federal law. *See id.* ("[A]n offender need not produce a sample prosecution when the statutory language itself . . . creates the realistic probability that a state would apply the statute to conduct beyond the generic definition." (citation and internal quote marks omitted)).

Hicks has not identified any judicial decision supporting his claim of overbreadth. He instead relies exclusively on a slight variance in the statutory text, seizing on the words "completely defoliated" in Georgia's mature-stalks exclusion. (Blue Br. 25) ("A conviction of a Georgia marijuana offense can rest on mature stalks that are not completely defoliated."). The presence of those words, however, does not demonstrate that Georgia criminalizes conduct that federal law permits.

It is useful to start by recognizing that both Georgia law and federal law exclude "completely defoliated mature stalks" of the cannabis plant from their definitions of marijuana. Georgia law does so explicitly, while federal law does so implicitly (the "mature stalks"

excluded by federal law necessarily include the subset of "completely defoliated mature stalks"). Thus a person who possesses with intent to distribute *solely* defoliated (leafless) mature stalks of a cannabis plant cannot be prosecuted for doing so under Georgia law or federal law—because what he possesses is not marijuana under the law of either jurisdiction.

But what about *foliated* mature stalks—i.e., stalks containing leaves?[10] How would a person who possesses with intent to distribute foliated mature stalks of a cannabis plant be treated under Georgia law and federal law? The treatment of this conduct goes to the heart of Hicks's stalks-overbreadth argument because Hicks posits that a person who possesses with intent to distribute foliated mature stalks violates Georgia law but not federal law. (Blue Br. 25) ("A conviction of a Georgia marijuana offense can rest on mature stalks that are not completely defoliated. But this form of cannabis would not qualify as federal marijuana."). If this conduct violates Georgia law but not federal law, Hicks's overbreadth argument succeeds. But if it violates *both*

---

10 "Foliated" means "Furnished with or consisting of leaves." *See* https://www.oed.com/dictionary/foliated_adj?tab=meaning_and_use#3939359 (visited May 17, 2024).

Georgia law and federal law, Hicks's overbreadth argument fails. The answer is straightforward: Possessing with intent to distribute foliated mature stalks of cannabis plants is unlawful in both jurisdictions.

*Georgia law*. By excluding "completely defoliated" mature stalks, Georgia defines marijuana to include foliated (i.e., leaf-containing) mature stalks. So a person violates Georgia law when he possesses with intent to distribute mature stalks containing cannabis leaves, because both the cannabis leaves and the attached mature stalks are individually treated as marijuana under Georgia law. As a result, the combined weight of mature stalks and their attached leaves counts toward the total weight of the possessed marijuana. *See Westberry v. State*, 178 Ga. App. 243, 243 (1986) (noting that "the total weight of the confiscated marijuana plants, includ[ed] *stalks*, stems, and *leaves*" (emphasis added)). But the weight of "completely defoliated" mature stalks, on the other hand, must be subtracted from the weight of the possessed marijuana. *See*, *e.g.*, *Dunn v. State*, 178 Ga. App. 6, 8 (1986) (noting that the weight of "completely defoliated mature stalks" is "not calculable" toward the total marijuana weight).

*Federal law*. Although "mature stalks" are excluded from the federal marijuana definition, it is not the case that a person who possesses with intent to distribute foliated mature stalks of a cannabis plant has not violated federal law. Rather, it means only that one part of the possessed cannabis plant would qualify as marijuana (the leaves) while one part would not so qualify (the mature stalks). Yet because one who possesses with intent to distribute foliated mature stalks of a cannabis plant possesses with intent to distribute an object that contains marijuana, that person, in doing so, violates federal law. What's more, under federal law—despite the fact that cannabis leaves are marijuana and mature stalks are not—the weight of mature stalks is combined with the weight of their attached cannabis leaves to determine the total weight of the possessed marijuana.[11]

---

[11] For certain § 841 offenses, weight is consequential to the penalty. *See*, *e.g.*, 21 U.S.C. § 841(b)(1)(A)(vii) ("1000 kilograms or more of a mixture or substance containing a detectable amount of marihuana"); 21 U.S.C. § 841(b)(1)(B)(vii) ("100 kilograms or more of a mixture or substance containing a detectable amount of marihuana"). No particular weight is required to be proven to sustain a conviction under § 841(b)(1)(C) for possessing with intent to distribute marijuana, although weight may have probative value as circumstantial evidence of one's intent to distribute. *See*, *e.g.*, *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989) ("Intent to distribute can be proven circumstantially from, among other things, the quantity of [a controlled

*See*, *e.g.*, *United States v. Acosta*, 963 F.2d 551, 555 n.3 (2d Cir. 1992) ("[A]s to marijuana, Congress has specifically noted that all parts of a marijuana plant are to be considered in the weight calculation."); *United States v. Berry*, 876 F.2d 55, 56 (8th Cir. 1989) ("Although the statutory definition of marijuana specifically exempts the stalks, . . . the court did not commit error in sentencing Berry based on a quantity of marijuana that included the plants' stalks."); *United States v. Garcia*, 925 F.2d 170, 173 (7th Cir. 1991) ("[S]talks of the marijuana plant, although excluded from the guideline definition of marijuana, can still constitute part of a 'mixture or substance' containing a detectable amount of marijuana for the calculation of weight of the controlled substance seized.").

The upshot, then, is that one who possesses with intent to distribute foliated mature stalks of a cannabis plant violates Georgia law because, in doing so, he possesses with intent to distribute two forms of marijuana, in violation of O.C.G.A. § 16-13-30(j)(1). And

---

substance] and the existence of implements such as scales commonly used in connection with the distribution of [a controlled substance].").

because cannabis leaves are themselves marijuana under federal law,[12] one who possesses with intent to distribute foliated mature stalks of a cannabis plant violates federal law because, in doing so, he possesses with intent to distribute a controlled substance (cannabis leaves), in violation of 21 U.S.C. § 841(a)(1). Because Georgia law and federal law both criminalize the same conduct, Hicks has not shown that Georgia's marijuana definition criminalizes conduct permitted by federal law.[13]

---

[12] Recall that under federal law marijuana includes "*all parts* of the plant Cannabis sativa L.," 21 U.S.C. § 802(16)(A) (emphasis added), that are not excluded. Cannabis leaves are not excluded.

[13] In the district court, but not in this Court, Hicks cited *Said v. U.S. Att'y Gen.*, 28 F.4th 1328 (11th Cir. 2022), in support of his stalks-overbreadth argument. That case, however, is inapposite. In *Said*, the Court considered the scope of Florida's definition of marijuana, which encompassed "all parts of any plant of the genus Cannabis" but which—unlike Georgia's definition—contained no exclusion for "mature stalks" of any kind (foliated or defoliated). *Id.* at 1331. As a result, under Florida law, a person can be prosecuted for possessing with intent to distribute *solely* defoliated mature stalks of cannabis, while that same conduct, as shown above, would not subject a person to prosecution under federal law. Florida's marijuana definition is thus materially dissimilar to Georgia's definition, and *Said* is of no help to Hicks.

### C. Both Georgia law and federal law defined marijuana to include "hemp" at the relevant times—when Hicks possessed with intent to distribute marijuana in 2000, 2007, 2009, and 2012—thereby creating no categorical overbreadth.

Hicks argues that because Georgia's definition of marijuana included hemp in 2000, 2007, 2009, and 2012 yet the federal definition excluded hemp in 2023 when he was sentenced for violating § 922(g)(1), the Georgia definition is categorically broader than the federal definition as of the date of federal sentencing. (Blue Br. 34-35.) The flaw in Hicks's argument is that it relies on a comparison of state and federal law as of the date of federal sentencing, rather than as of the dates of his previous state convictions. This Court has rejected the date-of-federal-sentencing rule that Hicks advocates. *See Jackson*, 55 F.4th at 854, 859 (adopting a date-of-previous-state-conviction rule for comparing state and federal law under ACCA's categorical approach). Hicks acknowledges that hemp was included in both the Georgia and federal marijuana definitions at the time of his Georgia convictions, and he thus concedes that his hemp-overbreadth argument is foreclosed by *Jackson*. (Blue Br. 15, 22.)

## II. When he violated § 922(g)(1), Hicks's four marijuana convictions were "controlled substance offenses," as defined by U.S.S.G. § 4B1.2(b).

In adopting the PSR without change, the district court found that Hicks was subject to an initial offense level of 24 under U.S.S.G. § 2K2.1(a)(2), because he had at least two previous convictions for "controlled substance offenses" when he violated § 922(g)(1). (ECF No. 47 ¶ 20); (ECF No. 57 at 1) ("The court adopts the presentence investigation report without change."). Hicks now challenges that offense level for the first time on appeal. The district court did not err—plainly or otherwise—in finding that Hicks was subject to an offense level of 24.[14]

This Court held in *Dubois* that, for purposes of applying the term "controlled substance offense" under the guidelines, "*state law* defines which drugs qualify as a 'controlled substance' if the prior conviction was under state law." *Dubois*, 94 F.4th at 1296. That determination led

[14] The Court need not reach this argument if it concludes that Hicks was an armed career criminal under ACCA and thus subject to an offense level of 34 under U.S.S.G. § 4B1.4(b)(3)(A). A finding that Hicks is subject to ACCA would render irrelevant his initial offense level of 24, mooting his arguments that his marijuana convictions were not controlled substance offenses.

the Court to "hold that a 'controlled substance' under section 4B1.2(b)'s definition of 'controlled substance offense' is, for prior state offenses, a drug regulated by state law at the time of the conviction." *Id.* at 1300. A straightforward application *Dubois* compels the rejection of Hicks's argument that his marijuana convictions are not controlled substance offenses.

Georgia law criminalized the possession with intent to distribute marijuana when Hicks engaged in that conduct. *See* O.C.G.A. § 16-13-30(j)(1) (2000), (2007), (2009), and (2012) (proscribing the "possess[ion] with intent to distribute marijuana"). Georgia law thus regulated (i.e., controlled) marijuana at the relevant times. *Dubois* holds that because marijuana was "regulated by state law at the time of [Hicks's] conviction[s]," 94 F.4th at 1300, marijuana was a "controlled substance" for purposes of U.S.S.G. § 4B1.2(b). And as a result, all four of Hicks's marijuana convictions are controlled substance offenses. The district court did not err in calculating a base offense level of 24.

Hicks points out (Blue Br. 40-41) that the Georgia Court of Appeals has held that marijuana is not a "controlled substance" as that statutory term is defined by Georgia law because marijuana does not

appear on any Georgia drug schedule. *See C.W. v. Dep't of Human Servs.*, 353 Ga. App. 360, 362 (2019). But *C.W.*'s holding does not prevent marijuana from being a "controlled substance" under U.S.S.G. § 4B1.2(b), as this Court held in *Dubois*.

Georgia criminalizes doing certain things with "controlled substances." O.C.G.A. § 16-13-30(a) ("Except as authorized by this article, it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance."); O.C.G.A. § 16-13-30(b) ("Except as authorized by this article, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance."). But in addition to that, Georgia separately and independently criminalizes the sale, manufacture, delivery, distribution, dispensing, administering, and purchasing of "marijuana," and the possession with intent to distribute it. *See* O.C.G.A. § 16-13-30(j)(1) ("It shall be unlawful for any person to possess, have under his or her control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana.").

The fact that Georgia criminally regulates (i.e., controls) marijuana in this manner—proscribing its purchase, sale, possession, manufacture, delivery, distribution, dispensation, and administration, despite not being labelled a controlled substance by state law—is why, as *Dubois* held, marijuana is a "controlled substance" as that term is used in U.S.S.G. § 4B1.2(b). Contrary to what Hicks seems to suggest or imply, *C.W.*'s holding is not in any tension with *Dubois*. Simply put, where previous state-law convictions are at issue, *Dubois* instructs courts to ask only whether the previous conviction involved "a drug regulated by state law at the time of the conviction." *Id.* at 1300. Marijuana was indisputably "a drug regulated by [Georgia] law at the time of [Hicks's] conviction[s]."

For these reasons, Hicks had at least two previous convictions for controlled substance offenses and was, consequently, subject to a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2). The district court did not err in so concluding.

## III. Hicks's Second Amendment challenges to § 922(g)(1) are foreclosed by binding precedent.

Hicks argues that the district court erred in accepting his guilty plea because § 922(g)(1) violates the Second Amendment, both facially

and as applied to him. (Blue Br. 43-61, 62-63.) Hicks's challenges to § 922(g)(1) are foreclosed by *United States v. Rozier*, 598 F.3d 768, 770-71 (11th Cir. 2010). Hicks agrees. (Blue Br. 13, 17, 18.)

This Court has held that *Rozier*—which sustained § 922(g)(1) against a Second Amendment challenge—was not abrogated by the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). *See Dubois*, 94 F.4th at 1293 ("*Bruen* did not abrogate *Rozier*."). Hicks acknowledges that "*Dubois* binds this panel both as to the merits of the Second Amendment issue, and to whether *Bruen* abrogated *Rozier*." (Blue Br. 43.) Even though Hicks insists that "*Dubois* was wrong on both counts" (Blue Br. 43), his challenges are meritless and must be rejected under this Court's precedent.

## IV. Even if *Rozier* and *Dubois* do not bar Hicks's as-applied Second Amendment challenge to § 922(g)(1), it is meritless in any event because one may not obtain an exemption from § 922(g)(1) based on the nature of his crime or his individual circumstances.

Even if not foreclosed by *Rozier* and *Dubois*, any as-applied challenge to § 922(g)(1) fails on plain-error review for two reasons: the district court committed no error, and, even if it did, the error was not plain in this Circuit.

Congress, in § 922(g)(1), expressed its intention to disarm individuals who have been convicted of crimes that satisfy the common definition of a felony—that is, crimes punishable by imprisonment for more than one year. In interpreting other provisions of the Bill of Rights that require courts to distinguish among different types of crimes, the Supreme Court has traditionally focused on the "maximum authorized penalty"—which "provides an 'objective indication of the seriousness with which society regards the offense'"—rather than on "the particularities of an individual case." *Lewis v. United States*, 518 U.S. 322, 328 (1996) (brackets and citation omitted). For example, the Grand Jury Clause applies only to "capital" or "infamous" crimes, U.S. Const. Amend. V, and a crime is "infamous" if it is punishable by "imprisonment for more than a year," *Branzburg v. Hayes*, 408 U.S. 665, 687 n.24 (1972) (citation omitted). The Sixth Amendment right to a jury trial similarly does not extend to petty offenses, and an offense is petty if it is punishable by a prison term of six months or less. *See Blanton v. City of North Las Vegas*, 489 U.S. 538, 541-45 (1989).

To the extent it entertains Hicks's as-applied challenge at all, this Court should follow a similar approach in interpreting the Second

Amendment, which is subject to the same "body of rules" as "the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (citation omitted). In particular, when a person has been convicted of a crime punishable by more than one year of imprisonment, a court need not inquire further into the nature of the crime in order to determine whether disarmament is justified. Rather, the maximum authorized penalty for the offense by itself establishes that the crime is serious enough to support disarmament. *See Medina*, 913 F.3d at 160-61.

A regime of individualized as-applied challenges to § 922(g)(1) would be unsound in principle and unworkable in practice. To begin, it would distort the separation of powers. In our constitutional system, the legislative branch traditionally determines the consequences of criminal convictions—not only the punishment, but also the collateral consequences, such as disfranchisement, disqualification from jury duty, ineligibility for public benefits, sex-offender registration, and disarmament. The executive branch, in turn, traditionally grants clemency if it determines that the punishment or the collateral consequences prescribed by law do not fit a particular offender's circumstances. If federal courts were to create a system of as-applied

exemptions from § 922(g)(1), they would in effect usurp the executive branch's role of deciding when to make "exceptions" to the "rigor" and "severity" of the "criminal code" enacted by Congress. *The Federalist* No. 74, at 501 (Alexander Hamilton) (Jacob E. Cooke ed. 1961).

Additionally, a regime of individualized as-applied challenges would treat the right to possess arms differently from other rights that criminals forfeit upon conviction. For example, states have long denied convicts the right to vote, the right to serve on juries, and the right to hold public office. Neither this Court nor the Supreme Court has ever suggested that a felon can challenge those disabilities on the ground that they do not fit his *particular* felony or his *particular* circumstances. The Court should not treat the right to possess arms any differently.

Finally, a regime of individualized as-applied challenges to § 922(g)(1) would pose serious problems of judicial administration. Hicks has failed to offer a workable test for identifying the applications of § 922(g)(1) that, in his view, would violate the Second Amendment. (Blue Br. 62-63.) Hicks, in fact, does not even try to craft a test, instead asserting only that § 922(g)(1) violates the Constitution as applied to "persons with a criminal history like [his]." (Blue Br. 63.)

Hicks appears to suggest that Congress may disarm only those felons whose criminal history bespeaks a certain level of dangerousness. (Blue Br. 63.) Congress previously tried a variant of that approach without success. Until 1992, felons could obtain relief from § 922(g)(1) by demonstrating to the ATF that they would "not be likely to act in a manner dangerous to public safety." 18 U.S.C. § 925(c). But Congress found that program unworkable and abandoned it. A congressional report explained that judging whether applicants posed "a danger to public safety" was "a very difficult and subjective task" that "could have devastating consequences for innocent citizens if the wrong decision is made." S. Rep. No. 353, 102d Cong., 2d Sess. 19, 20 (1992). Another report explained that "too many . . . felons whose gun ownership rights were restored went on to commit crimes with firearms." H.R. Rep. No. 183, 104th Cong., 1st Sess. 15 (1996).

The regime that Hicks appears to envision would, if anything, be even *less* feasible than the system of administrative relief that Congress tried and abandoned. Unlike an administrative agency, courts "possess neither the resources to conduct the requisite investigations nor the expertise to predict accurately which felons may carry guns

without threatening the public's safety." *Pontarelli v. United States Dep't of the Treasury*, 285 F.3d 216, 231 (3d Cir. 2002) (en banc).

In any event, even if Hicks could establish that § 922(g)(1) violates the Second Amendment as applied to him, any such violation would not be a "plain" error in this Circuit. Hicks has not cited any decision from the Supreme Court or this Court invalidating § 922(g)(1) as applied to *any* defendant at all—much less one similarly situated to him. That is sufficient to defeat his claim of error under Rule 52(b). *See United States v. Moore*, 22 F.4th 1258, 1266 (11th Cir. 2022) ("[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving [the issue].").

## CONCLUSION

For these reasons, Hicks's conviction and sentence should be affirmed.

May 17, 2024

PETER D. LEARY
UNITED STATES ATTORNEY

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

Post Office Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that the Brief of Appellee complies with the type and volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains a total of 7,586 words, which is less than the 13,000-word limit imposed by Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). Using Microsoft Word – Office 365, this brief has been prepared using a proportionally spaced typeface in 14-point characters in Century Schoolbook font.

May 17, 2024

PETER D. LEARY
UNITED STATES ATTORNEY

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

Post Office Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed the Brief of Appellee with the Clerk of Court using the Eleventh Circuit's CM/ECF system, which will send electronic notification of filing to counsel of record for Appellant.

I further certify that four paper copies of the Brief of Appellee were dispatched for filing with the Clerk of Court using a third-party commercial carrier that will deliver them to the Clerk within three days.

May 17, 2024

PETER D. LEARY
UNITED STATES ATTORNEY

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

Post Office Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov